NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE LG/ZENITH REAR PROJECTION TELEVISION CLASS ACTION LITIGATION | : | Civ. Action No.: 06-5609 (JLL) **OPINION** |

**LINARES, District Judge.**

The instant matter comes before the court by way of the parties' joint motion for final certification and approval of the class settlement, filed on January 20, 2009 [CM/ECF #49].

## INTRODUCTION

This action was filed on November 26, 2006, by individuals seeking recovery against LG Electronics USA, Inc., LG Electronics Inc. and Zenith Electronics Corp. (collectively "Defendants"). The original complaint seeks damages and equitable relief for an alleged defect in the optical engine of certain television sets, causing "blue haze, streaks, and other anomalies." (Compl. at 2.) The complaint also alleged that Defendants suggested an ineffectual repair, costing $2000, to customers whose sets exhibited the defect. (Id. at 3.) Subsequent to filing the original complaint, another matter was consolidated with this one by consent. That case is No. 07-660, filed by Oreste Macri, and its claims are substantially identical to those in the original case.

An Amended Complaint was filed on June 27, 2007. It provided for additional named plaintiffs and alleged the same facts as set forth in the original complaint and the Macri

complaint. It sought relief under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.), unfair and deceptive acts and practices laws of more than forty United States jurisdictions, the Magnuson-Moss Act (15 U.S.C. § 2301 et seq.), breach of express warranty, and breach of implied warranty.

Plaintiffs and Defendants subsequently reached a settlement, and presented this Court with a motion for conditional certification, which was ordered on October 22, 2008. The October 22, 2008 Order: conditionally certified the class under Rule 23, appointed class representatives and class counsel, set the Settlement Hearing date for Feb. 2, 2009, capped counsel fees at $1,550,000, mandated notice to members of the settlement class by Nov. 29, 2008, required posting of notice to a settlement website within seven days, required publication notice within 45 days, required requests for exclusion by Jan. 13, 2009, required objections to be postmarked by Dec. 29, 2008, required class members to request to be heard at the hearing by Dec. 29, 2008, stayed the action pending the Settlement Hearing, and required filing of all papers by Jan. 20, 2009.

The proposed class settlement provides class members with a warranty extension until July 1, 2010; in-home, no cost replacement of defective optical engines in the subject televisions; and if timely repair is not possible, replacement of their televisions with a new television of comparable size. It also provides an incentive award to the class representatives in the form of new televisions.

This Court held a fairness hearing on the proposed settlement on February 2, 2009. No

objections were received by the Court[1] or by the parties prior to the deadlines set in the October 22, 2008 Order, and no objections were made at the hearing.

## DISCUSSION

Although this is a joint motion, Plaintiffs bear the burden on certification. Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). In their moving papers for the February 2, 2009 hearing, therefore, Plaintiffs seek to have this Court rule that notice to the class was proper, certify the class, find the settlement fair and reasonable, and award counsel fees. (Br. at 9.) Approval of the settlement proceeds after certification. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 618-19 (1997) (approving of Third Circuit requirement that only classes that could be certified for litigation be certified for settlement). Additionally, as this Court ordered conditional certification on October 22, 2008, notice to class members will be addressed prior to other final certification issues. See Fed. R. Civ. P. 23(c)(2) (requiring notice after certification); Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173 (1974) ("Rule 23(c)(2) provides that, in any class action maintained under subdivision (b)(3), each class member shall be advised that he has the right to exclude himself from the action on request or to enter an appearance through counsel, and further that the judgment, whether favorable or not, will bind all class members not requesting exclusion.").

**A.     Notice**

Federal Rules of Civil Procedure 23(c)(2) and 23(e) describe the notice required to class members prior to a settlement and final certification. In re Prudential Ins. Co. Sales Practice Litig., 962 F. Supp. 450, 526 (D.N.J. 1997) [In re Prudential]. Rule 23(c)(2) requires that in Rule

---

[1] The lone communication received by the Court was a request by a non-class member concerning a nonparty.

23(b)(3) class actions, such as this one:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> **(i)** the nature of the action;
>
> **(ii)** the definition of the class certified;
>
> **(iii)** the class claims, issues, or defenses;
>
> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>
> **(v)** that the court will exclude from the class any member who requests exclusion;
>
> **(vi)** the time and manner for requesting exclusion; and
>
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).  Prior to approving a class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(2).  The class settlement notice has been held to require notice "(1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." In re Prudential, 962 F. Supp. at 527.

Notice in this case occurred through direct mailing to 6,105 class members, publication via Parade Magazine on November 23, 2008, and a website (www.rearprojectiontvsettlement.com) containing the direct mailing information and other details.  (Br. at 17-18.)  CAFA notice was sent to the U.S. Attorney's office in every state on June 27, 2008.  (Thompson Cert. ¶ 12.)

All versions of notice also referred to a toll-free number set up to answer questions. (Br. at 18.)

        1.      Rule 23(c)(2) Notice

The Supreme Court has emphasized that Rule 23(c)(2)'s "best notice" language requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." Eisen, 417 U.S. at 173. Here, the Defendants have engaged in an extensive process to identify and mail notices to all persons in the class who can be individually identified. (Thompson Cert. ¶¶ 6-8.) Such notice has been described by courts as the acme of Rule 23(c)(2) notice. Eisen, 417 U.S. at 175 (finding that for individual class members whose names and addresses are ascertainable, individual mailed notice is the best practicable notice); Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 225 (D.N.J. Feb. 15, 2005) (Linares, J.).

Publication notice is considered a sufficient means to reach class members whose identities and addresses are not known. Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."). Although a single instance of publication in one periodical may not be the norm for class notice, it has been found to meet the standards of Rule 23(c)(2). In re Four Seasons Sec. Laws Litig., 58 F.R.D. 19, 32 (W.D. Okla. Dec. 18, 1972).

The individually mailed notice includes all of the required elements listed seriatim in Rule 23(c)(2). It provides a concise and plain summary of the nature of the action, the definition of the class, and the legal claims and issues. (Thompson Cert. Ex. A. at 1-3.) It also provides an easy-to-understand and highly-visible summary chart of each member's legal options, detailing

the necessary explanation of the means and effect of exclusion, that members could retain counsel, and the binding effects of a class judgment. (Id. at 2, 4, 6.) Similarly, the publication notice sufficed to meet the requirements of Rule 23(c)(2), and provided additional avenues to receive information through a toll-free number and the website mentioned supra. (Id. at Ex. C.) This Court, therefore, finds that the notice in this case meets the requirements of Rule 23(c)(2).

### 2. Rule 23(e) Notice

Since the notice sent to class members was a class settlement notice, it must also meet the separate, though less stringent, requirements of Rule 23(e) for class settlements. Fed. R. Civ. P. 23(e). Class settlement notice must be reasonably calculated to alert parties to the existence of the settlement and make it known that they will have an opportunity to present objections. Varacallo, 226 F.R.D. at 225. "Notice of a proposed settlement under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." In re Prudential, 962 F. Supp. at 527.

Both the publication notice and the individual notice provided here meet the standard of Rule 23(e). Both forms stated that the litigation involved the defect in the televisions specific to the class, stated that a settlement was pending that concerned the defect, gave court docket information and provided contact information for additional inquiry, and gave sufficient details on the fairness hearing. The notices provided, therefore, met the requirements of Rule 23(e), and notice as a whole was sufficient in this matter for both certification and settlement.

### B. Final Certification

The class defined in the instant litigation seeks final certification as a Rule 23(b)(3) class seeking damages against the defendants based upon predominating issues of fact and law. (Br. at 33.) The actual class definition reads as follows:

> All end user consumers in the United States who, prior to the date of the Agreement purchased or received as gifts any of the following models of LG or Zenith Rear Projection televisions: D52WLCD, D60WLCD, E44W46LCD, E44W48LCD, M52W56LCD, RU-44SZ80L, RU-48SZ40, RU-52SZ30, RU-52SZ80L and RU-60SZ30. Excluded from membership in the Settlement Class are the following: (a) LG or its affiliates, including LG employees and immediate family members; (b) retailers, wholesalers and other middlemen who purchased a Television for commercial use or resale; (c) any claims aggregators or person or entity who claims to be an assignee of rights associated with any of the Televisions.

(Id. at 29.) In order to be certified, the class must meet all of the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1-4). It must also meet the additional requirements of Rule 23(b)(3): superiority and predominance. Fed. R. Civ. P. 23(b)(3).

Rule 23 has been held to permit classes certified only for settlement. In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 777-78 (3d Cir. 1995) [In re GM]. In certifying a settlement class, the court must make findings of fact as to each Rule 23 certification factor, except for manageability at trial: "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Amchem Prods., Inc., 521 U.S. at 620; In re Prudential, 962 F. Supp. at 508. In other respects the certification must be considered as if the case were going to trial. In re Prudential, 962 F. Supp. at 508. In borderline cases, however, the scales tip in favor of

certification.  Id.

### 1. Numerosity

Rule 23 requires that a class be sufficiently numerous as to render joinder impracticable. Fed. R. Civ. P. 23(a)(1).  Impracticability does not mean impossibility: sufficient numerosity can be shown with approximately one hundred class members.  In re Prudential, 962 F. Supp. at 508; Varacallo, 226 F.R.D. at 230.  Here, the parties assert that there are tens of thousands of class members, and mailed notice to 6,105.  (Br. at 31.)  The numerosity requirement, therefore, is met.

### 2. Commonality

The commonality requirement in Rule 23 requires that "there are questions of law or fact common to the class."  Fed. R. Civ. p. 23(a)(2).  Commonality is satisfied if one question of law or fact is common to the class; the claims need not be identical.  Baby Neal, 43 F.3d at 56; Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988).  Additionally, where the harm suffered by all class members is the same, commonality is satisfied.  Baby Neal, 43 F.3d at 56.  Here, all members of the class seek resolution for the same defect in their televisions manufactured by Defendants.  This type of equivalent harm satisfies commonality.  Id.

### 3. Typicality

The third class certification requirement mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). Its purpose is to ensure that the interests of the class representatives do not diverge from those of the class as a whole.  Baby Neal, 43 F.3d at 57.  Where class members all allegedly suffered from the same course of conduct, and the legal theories for all members are similar, typicality will

generally be satisfied. Id. at 57-58.

In the instant motion for certification, all class members claim that the same course of conduct occurred: Defendants are alleged to have sold televisions with a defect and proffered an expensive remedy for the defect. Typicality is, therefore, satisfied.

### 4. Adequacy

In order to certify a class, a court must also find adequacy: that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." In re Prudential, 962 F. Supp. at 519.

There has been no objection to the adequacy of class counsel. The submitted firm resume of Robert I. Lax & Associates contains descriptions of its participation in fourteen complex class action suits, indicative of the firm's expertise. (Counsel Dec. Ex. A, Resume at 2-6.) Similarly, The Sobelsohn Law Firm, Lange and Koncius, LLP, Baron & Herskowitz, and PinilisHalpern, LLP all demonstrate experience in handling complex litigation. (Id. Ex. B, Resume at 2-3; Ex. C, Resume at 1-2; Ex. D, Resume at 1-2; Ex. E, Resume at 1-5.) The attention of plaintiffs' counsel in general to this litigation in pursuing complex discovery and submitting to fruitful mediation before the Hon. Nicolas J. Politan, U.S.D.J. (Ret.) also speaks to the unchallenged competency of counsel.

There is also no objection to the adequacy of representation of the class representatives. There is also no indication in the record that their interests diverge from those of the class as a whole. No defenses unique to the class representatives have been raised. Beck v. Maximus, Inc.,

457 F.3d 291, 296 (3d Cir. 2006). Similarly, there is no disparity, other than incentive awards, between the relief to be received by the class representatives and the class as a whole, and therefore no divergent interests in that regard. Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996).

### 5.  Superiority and Predominance

In a Rule 23(b)(3) settlement class, a court must find that the action is maintainable by satisfying the superiority and predominance test: "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets forth three (inexhaustive) factors for superiority and predominance that are relevant to a settlement class certification: class members' interests in control over individual claims, extent of litigation already begun by or against class members, and the desirability of concentrating the claims in this forum. Id.; Amchem Prods., Inc., 521 U.S. at 620.

In examining predominance, the purpose of the inquiry is to determine whether individual issues outweigh class-wide issues. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Amchem Prods., Inc., 521 U.S. at 625. Here, plaintiffs all allege the same conduct by Defendants and would seek to utilize the same evidence in each individual action as in the class action. (Br. at 33.) Nothing in the record exists to indicate that individual issues would predominate at trial. Predominance, therefore, exists in this matter.

A class action is also a superior method of resolving this litigation. Here, although

individual plaintiffs have purchased relatively expensive televisions, it is not clear that the damages each has suffered could support individual litigation. Class actions permit recovery for plaintiffs whose individual claims cannot be economically litigated, In re Prudential, 962 F. Supp. at 522, and this matter is just such a case. Additionally, as this is a nationwide class, traditional methods of joinder and consolidation are less appropriate than a class action. Id. at 523. Plaintiffs also aver that there are no other pending actions related to this matter elsewhere, and this forum is a convenient one due to the headquarters of two of the Defendants being located in the state of New Jersey. Id. at 524; Br. at 35.

   **6.**  **Certification**

As this class meets all of the requirements of a Rule 23(b)(3) class, this Court grants final certification.

**C.**  **Approval of the Settlement**

Under Rule 23, a court may only approve a class settlement after it has held a hearing and found that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit has enumerated nine factors to be utilized in this determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). The Third Circuit has also recognized the

utility of examining other factors as they are relevant to individual cases. In re Prudential Ins. Co. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (developing additional factors relevant to mass tort context).

A presumption of fairness exists where a settlement has been negotiated at arm's length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. In re Wafarin Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). The presumption of fairness attaches in this case because class counsel conducted the settlement negotiations before Judge Politan, pre-settlement discovery had supplied counsel with an extensive understanding of the underlying factual issues, the attorneys in this matter are experienced in similar litigation, and none of the class members have objected. Varacallo, 226 F.R.D. at 235; Br. at 10-13.

### a.  Complexity, Expense, and Duration

Counsel estimate that trial would last approximately one month in this matter, and would involve expert testimony on the components of the televisions in question. (Br. at 21.) Additionally, the settlement negotiations resulted in the withdrawal of a motion to dismiss by Defendants, and thus this matter could likely have would through at least two dispositive motions (one to dismiss and one for summary judgment) prior to trial, increasing the expenditure of party and judicial resources and delaying judgment. (Id. at 22.) The first factor, therefore, weighs in favor of settlement.

### b.  Reaction of the Class

No class members have objected. Plaintiffs assert, contrariwise, that they have received only positive communications from the class on the settlement. (Id. at 23.) Courts have viewed

unanimous class approval as nearly dispositive of fairness. Fickinger v. C.I. Planning Corp., 646 F. Supp. 622, 631 (E.D. Pa. 1986). The absence of objections results in the second factor favoring the settlement.

###### c. Stage of Proceedings and Discovery

The third factor seeks to assess whether or not the parties have a sufficient understanding of the merits of the case prior to reaching a settlement. Varacallo, 226 F.R.D. at 238. Prior to settlement in this matter, extensive discovery and expert consultations took place. (Br. at 24.) The parties having had an opportunity to evaluate the merits of the case, the third factor weighs in favor of settlement.

###### d. Risks of Establishing Liability and Damages

The risks of proceeding to trial in any case are considerable. In re Prudential, 962 F. Supp. at 539. Here, the risks would have included expert qualification and choice of law issues regarding the numerous out-of-state causes of action cited in the Amended Complaint for the national class. Ford Motor Co. Ignition Switch Prods. Liab. Litig.,174 F.R.D. 332, 348 (D.N.J. Aug. 28, 1997) ("Since the laws of each of the fifty states vary on important issues that are relevant to plaintiffs' causes of action and defendants' defenses, the court cannot conclude that there would be no conflict in applying the law of a single jurisdiction, whether it be Michigan, or New Jersey, as the plaintiffs suggest."); Am. Compl. at 12-15; Br. at 25. Furthermore, cases involving battles of competing experts have been found to affect the likelihood of both success on liability and in the amount of damages. In re Prudential, 962 F. Supp. at 539. The factors pertaining to risks of establishing liability and damages, therefore, weigh in favor of settlement.

###### e. Risks of Maintaining the Class

A substantial risk in class actions with state-law claims from multiple jurisdictions under New Jersey's choice of law scheme is that predomination can be defeated by the finding that each state has the greatest interest in its own law being applied. Ford Motor Co. Ignition Switch Prods. Liab. Litig.,174 F.R.D. at 351 ("Viewing these variations in the context of a case involving five state-law causes of action, the laws of fifty states, and over twenty-three millions plaintiffs, the court must conclude that this suit cannot be practically and efficiently tried as a class action because plaintiffs have not established a predominance of common legal issues as required by Rule 23(b)(3)."). While such a finding is not certain at this point in the litigation, the possibility adds to the risk of pursuing this matter outside of the settlement. Additionally, Plaintiffs aver that Defendants would seek to oppose and appeal certification of a non-settlement class, causing this factor to come down in favor of settlement. (Br. at 26.)

### f. Ability of Defendants to Withstand a Greater Judgment

Plaintiffs concede that Defendants could withstand a greater judgment. (Id.) The argument put forward by Plaintiffs, that class members shall receive the benefit of their bargain, is more relevant to a comparison to other possible recoveries, and will be considered under that factor. This factor, therefore, weighs against settlement. (Id.)

### g. Reasonableness in Light of Best Possible Recovery and Reasonableness in View of Litigation Risks

The best possible recovery for the class, in light of the facts in the record and the Amended Complaint, would be treble compensatory damages and punitive damages. (Am. Compl. at 17-18.) Plaintiffs fairly characterize the settlement, instead, as benefit of the bargain recovery: extension of warranties for four years, combined with repair or replacement of

defective televisions. While this is significantly lower than the theoretical maximal recovery envisioned in the Amended Complaint, it does provide the kind of immediate and risk-free relief looked on with favor by other courts. See Varacallo, 226 F.R.D. at 239 (discounting potential recovery by risk of litigation); In re Prudential, 962 F. Supp. at 540 (same). These factors weigh in favor of settlement.

### h. Weighing the Factors

Examining the factors as a whole, the only factor weighing against settlement is the ability of Defendants to withstand a greater judgment. This factor, however, does not take into account the strength of Plaintiffs' case, and in light of the overwhelming weight of the other factors—particularly the total lack of objectors—the Girsh factors weigh in favor of settlement. This Court, therefore, approves the class settlement.

### D. Attorney's Fees and Incentive Awards

#### 1. Attorney's Fees

"In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." Varacallo, 226 F.R.D. at 248. Generally, a court will use either the percentage of recovery method or the lodestar method to determine the fee award. In re GM, 55 F.3d at 821. The lodestar method is considered most appropriate in statutory fee-shifting cases, and has the advantage of resembling tradional fee calculation, while the percentage of recovery method is seen as best approximating a contingent fee award in a common fund recovery. Id.

The parties in this matter negotiated attorney's fees after determining the class recovery. (Br. at 35.) The settlement capped the fee at $1,550,000. (Id.) The amount of the fee will not

reduce class members' recovery, and the fee will be paid directly by the Defendants. (Id. at 36.) The total amount of the fee sought is $1,528,786.30. (Br. at 39.) Plaintiffs' counsel argue that the negotiated fee in this matter is reasonable when cross-checked by either the lodestar or the percentage of recovery methods. (Id. at 38.)

Counsel's supporting documentation for the lodestar calculation indicates that this matter accounted for 1,703 attorney hours. (Id. at 39; Counsel Dec.) When multiplied by the applicable hourly rates for the attorneys, the total claimed lodestar is $989,364.80. On examination of the supporting certifications, however, the lodestar calculation for PinilisHalpern, LLP is incorrectly listed in the lodestar summary chart as $50,400, whereas the supporting certification lists only $46,400 in lodestar billing calculation. The amount of the lodestar should, therefore, be reduced to $985,364.80. When the lodestar is compared to the total fee sought, even after the reduction, the lodestar multiplier is 1.55. As lodestar multipliers in class action cases are found reasonable if they range from 2 to 4, the lodestar cross-check indicates that the fee is reasonable. Prudential Ins. Co. Sales Practice Litig. Agent Actions, 148 F.3d at 341.

In applying the percentage of recovery fee calculation method, a court examines the fee requested in light of the total class recovery. Varacallo, 226 F.R.D. at 249. Courts have found a fee to be reasonable in a class action if it is between nineteen and forty-five percent of the total recovery, with twenty-five percent serving as a benchmark figure. Id. Here, counsel argue that a conservative valuation of the warranty extension would be $450, and aver that the class consists of more than 60,000 individuals. (Br. at 41.) This calculation would indicate a total value to the class of $27,000,000. Using such a calculation, which excludes the value of any repair cost reimbursement or replacement televisions, the amount of the fee as a percentage of the recovery

16

would be 5.7%. Even if the number of class members, therefore, is overestimated in counsel's brief by a factor of three, the fee is reasonable as a percentage of the total award, and is hereby approved.

### 2. Class Representative Incentive Awards

Plaintiffs seek incentive awards, consisting of new LCD or plasma televisions costing between $1,500 and $3,000, for each of the class representatives. "Courts may grant incentive awards in class action cases to particular members of the class." In re Cendant Corp., Derivative Action Litig., 232 F. Supp 2d 327, 344 (D.N.J. 2002). Here, the incentive payment is small, and will not decrease the recovery of other class members. See In re Cendant Corp., Derivative Action Litig., 232 F. Supp 2d at 344 (finding that incentive award of $25,000 paid from attorney's fees requires lowered scrutiny). The incentive awards to the class representatives, therefore, are reasonable and are therefore approved.

### CONCLUSION

For the reasons set forth herein, this Court grants final certification to the settlement class, approves the settlement, approves the attorney's fees, and approves the class representative incentive awards. An appropriate Order accompanies this Opinion.

DATED: February18, 2009    /s/ Jose L. Linares
United States District Judge